**BAKER, Appellant,**

v.

**OHIO DEPARTMENT OF REHABILITATION
AND CORRECTION et al., Appellees.**

[Cite as *Baker v. Ohio Dept. of Rehab. & Corr.* (2001), 144 Ohio App.3d 740.]

Court of Appeals of Ohio,
Fourth District, Pickaway County.

No. 00CA31.

Decided Aug. 1, 2001.

*Dale Baker, pro se.*

*Betty D. Montgomery,* Attorney General, and *Jihad M. Smaili,* Assistant Attorney General, Corrections Litigation Section, for appellees.

———

EVANS, Judge.

This is an appeal from the Pickaway County Court of Common Pleas, which granted defendants-appellees' Civ.R. 12(B)(6) motion to dismiss the complaint of plaintiff-appellant Dale Baker for failure to state a claim upon which relief could be granted.

Appellant argues that the trial court erred in granting appellees' Civ.R. 12(B)(6) motion and dismissing appellant's complaint. We find appellant's argument as it pertains to his Eighth Amendment and retaliation claims to be well taken. However, we find this argument to be without merit as it pertains to the disability discrimination claim.

Appellant also argues that the trial court erred in not entering default judgment in appellant's favor because appellees failed to answer appellant's amended complaint. We find this argument to be without merit.

Further, appellant argues that this court should find the trial judge to be biased, thus assigning a new judge on remand. We find this argument to also be without merit.

Therefore, the judgment of the trial court is affirmed in part and reversed in part.

## STATEMENT OF THE CASE AND FACTS

This appeal concerns a *pro se* complaint and amended complaint filed by plaintiff-appellant Dale Baker, an inmate in the Orient Correctional Institution ("OCI").

At the outset, we note that appellant's complaint and amended complaint allude to a wide range of possible claims: his arguments span tort law, the Ohio Revised Code, and federal constitutional law. Nevertheless, appellant expressly states in his brief to this court that "because this controversy was filed under [Section 1983, Title 42, U.S.Code], for deprivation of constitutional rights under color of state law, federal law and not state law should govern this proceeding." Accordingly, we adopt the same approach taken by the trial court in this matter: we construe appellant's complaint and amended complaint as involving federal claims. See, generally, *State ex rel. Karmasu v. Tate* (1992), 83 Ohio App.3d 199, 206, 614 N.E.2d 827, 832 (holding that "considerable leniency must be afforded to *pro se* actions brought by prisoners"); see, also, *In re Election Contest of Democratic Primary Election* (1999), 87 Ohio St.3d 118, 717 N.E.2d 701 (explaining that "Civ.R. 12[B][6] motions * * * merely ascertain whether the complaint alleges the elements of the claim with sufficient particularity so that reasonable notice is given to the opposing parties, *i.e.,* Ohio generally follows notice, rather than fact, pleading"); accord *State ex rel. Williams Ford Sales, Inc. v. Connor* (1995), 72 Ohio St.3d 111, 647 N.E.2d 804.

I

On April 11, 2000, appellant filed a complaint in the Pickaway County Court of Common Pleas against defendant-appellee Ohio Department of Rehabilitation and Correction ("ODRC") and defendant-appellee Dr. Oppong, a physician with Frazier Heath Center ("FHC"), a skilled-nursing facility affiliated with the prison.[1] Appellant's complaint requested a declaratory judgment and injunctive

---

1. A brief overview of the health-care system in Ohio's prisons is here provided in an effort to explain both the context for appellant's factual allegations, as well as to establish the requisite state action for his federal constitutional claims.

relief for the violation of certain of his federal constitutional rights. Essentially, appellant asserted two federal constitutional violations in his complaint: (1) denial of proper medical care, a violation of his Eighth Amendment right to be free from cruel and unusual punishment; and (2) retaliation, a violation of his First Amendment right to file complaints and grievances.[2] To support these charges, appellant presented the following factual allegations in his complaint.

Appellant suffers from Charcot–Marie–Tooth disease ("CMT disease").[3] To lessen the effects of CMT disease on appellant's feet, appellee Oppong provided appellant with orthopedic shoes. Despite wearing these orthopedic shoes, on July 17, 1999, appellant broke his right foot "just by stepping down on it." That same day, appellant was taken to the emergency room in FHC for treatment.

Two days later, on July 19, 1999, the medical staff with FHC set appellant's right foot in a cast. That night, appellant returned to FHC, complaining of numbness in his right foot. Despite his complaints, the paramedic that saw him denied his request to remove the cast.

The following day, July 20, 1999, appellant again returned to FHC complaining of numbness in his right foot. This time, the cast was removed and replaced. Appellant recounted a conversation with a nurse who challenged the decision of the paramedic not to remove the cast the night before.

---

The ODRC's Bureau of Medical Services oversees and coordinates the delivery of health-care services to Ohio's prisons. It provides three levels of care.

First are infirmaries at each institution. These facilities address the routine, day-to-day health-care needs of the inmates.

Second are two skilled-nursing facilities, one of which is the Frazier Health Center at OCI. These facilities provide more intensive treatment for inmates with advanced illnesses and disabilities.

Third is a partnership with the Ohio State University Medical Center. This partnership provides inmates with emergency-room services, surgery capabilities, and advanced diagnostic testing. See Ohio Department of Rehabilitation and Correction, Bureau of Medical Services (Jan. 8, 2001), <http://www.drc.state.oh.us/web/medical.htm>.

2. Again, we emphasize that appellant's complaint alludes to a wide range of possible claims. Here, we construe the myriad claims contained in appellant's complaint as First and Eighth Amendment challenges. Indeed, these averments, though elusive, were expressly set forth in his complaint. See *In re Election Contest of Democratic Primary Election*, 87 Ohio St.3d at 118, 717 N.E.2d at 701; accord *State ex rel. Williams Ford Sales, Inc.*, 72 Ohio St.3d at 111, 647 N.E.2d at 804.

3. CMT disease is a collection of diseases caused by defects in various genes. The most common forms of CMT disease destroy the myelin sheath that protects the nerve axon of the peroneal nerve. This may lead to the wasting of muscle, the loss of sensation, and high-arched feet. The severity of the disease may range from unnoticeable to wheelchair-bound. See Thomas D. Bird, M.D., *Charcot–Marie–Tooth Hereditary Neuropathy Overview* (Aug. 7, 2000), <http://www.geneclinics.org/profiles/cmt/>.

On July 22, 1999, appellant met with a physician associated with the prosthesis clinic of the Ohio State University Medical Center ("OSUMC"). This physician informed appellant that appellee Oppong had not prescribed the correct orthopedic shoes. He further indicated that had appellant been wearing the correct orthopedic shoes, his foot would not have broken under his own weight. The physician ordered new orthopedic shoes, as well as leg braces, for appellant, and then referred him to OSUMC's orthopedic clinic.

Those medical personnel with whom appellant met at the OSUMC orthopedic clinic determined that his cast was again too tight. Accordingly, they removed and replaced the cast. Additionally, they prescribed a wheelchair for appellant, advising him not to put any pressure on his right foot for five weeks.

Upon returning to OCI, appellant discovered that appellee Oppong had ignored the wheelchair prescription of OSUMC's orthopedic clinic and had instead provided him with crutches. Appellant claimed that navigating on these crutches caused him increased pain and worsened his condition.

On August 2, 1999, appellant again visited with appellee Oppong. Appellant explained to appellee Oppong that his left foot had begun to hurt. However, appellee Oppong took no action to alleviate appellant's pain. Instead, he stated he would x-ray appellant's left foot when the cast on his right foot was removed.

On August 5, 1999, appellant "went on nurses sick call" because the pain in his left foot had become, in his estimation, unbearable.

On August 7, 1999, appellant's left foot "popped" under his own weight. Appellant returned to FHC's emergency room and was then transported to OSUMC. At OSUMC, it was determined that appellant's left foot was badly sprained. Accordingly, appellant was returned to OCI, placed in OCI's infirmary, and, for the first time, was issued a wheelchair.

On or about September 14, 1999, appellant again requested that his cast be removed, this time claiming that he was experiencing a burning sensation in his right leg. This request was denied.

On September 30, 1999, appellant was sent to OSUMC's orthopedic clinic to have his cast removed. Upon removal of the cast, a battery of sores was discovered on his leg. Further, it was revealed that his right foot was still broken. However, because of the sores on his leg, it was not possible to reset his broken foot in a cast. Thus, appellant was returned to the infirmary without a cast.

According to appellant, appellee Oppong denied his request for physical therapy, told appellant to begin walking on his right foot, and was "indifferent to [appellant's] telling him [that his] disease was getting worse and [that he] could not walk."

In November 1999, appellant was informed by another physician at FHC that his broken right foot had still not healed. Appellant was advised that, for his foot to properly heal, a metal pin or screw needed to be inserted in it.

As the OCI "mess hall," where the inmates ate, was in a building separate from the dormitory in which appellant resided, it was necessary for him to move about the prison. To do so, appellant resorted to hopping on his left foot.

In December 1999, appellant learned that there was a problem with the order for his orthopedic shoes and leg braces. Accordingly, they were reordered in January 2000. On or about this same date, appellant began experiencing numbness in his left leg.

On February 17, 2000, appellant claimed that he received the prescribed orthopedic shoes and leg braces he reordered in December 1999. However, they did not fit. A physician with FHC, once again, reordered the items. However, appellee Oppong rejected the order. Further, appellee Oppong refused to reissue appellant a wheelchair.

On March 29, 2000, appellant was taken to a prosthesis store in Columbus, Ohio, to be fitted for orthopedic shoes and leg braces. Again, appellee Oppong canceled the order. Appellant contended that appellee Oppong canceled this order out of "personal animosity against [appellant] for complaining and filing grievances."

## II

On May 4, 2000, appellant filed an amendment to his complaint, adding as a party defendant-appellee Brunton, the unit manager of the OCI dormitory in which appellant was housed. Appellant sought injunctive relief and "[a] declaratory judgment [that] defendant[s'] practiced policy as defined herein does discriminate against the handicapped and violate clearly established state and federal law."

To support this claim, appellant alleged that appellee Brunton, and other prison officials, forced him, as well as other disabled inmates, to "transgress in the elements of ice, wind, snow, sleet, hail, rain to eat when a fully viable mess hall [in appellant's dormitory] is present but has arbitrarily been converted * * * into an Officer Dining Room * * * and Hocking Technical College Culinary Arts OJT meal preparation."

## III

On May 10, 2000, appellees filed a Civ.R. 12(B)(6) motion to dismiss appellant's complaint for "failure to state a claim upon which relief can be granted." Civ.R. 12(B)(6). In the memorandum supporting the motion, appellees set out five

grounds as to why appellant's complaint should be dismissed: (1) noncompliance with Ohio's mandatory prisoner-litigant-filing requirements, (2) failure to meet the requirements for declaratory or injunctive relief, (3) lack of subject-matter jurisdiction, (4) failure to exhaust all administrative remedies, and (5) lack of federal constitutional violations.

On May 24, 2000, appellant responded to appellees' motion to dismiss, restating the facts as set forth in his complaint and amended complaint. Additionally, appellant requested that the lower court enter a default judgment in his favor because appellees had failed to timely respond to appellant's amended complaint.

That same day, the trial court issued its decision and judgment entry. Despite discharging all but two of the grounds set out in appellees' motion to dismiss, the lower court granted the motion. The trial court explained its finding as follows:

"[Appellant] has not presented sufficient evidence to establish a *prima facie* case to continue this matter to an evidentiary hearing. [Appellant's] complaint is a mere summary of numerous hearsay statements that are unsupported by the evidence. It appears to this Court that [appellant] has cost this State entirely too much money in treating his broken foot. Perhaps if [appellant] had to pay for his medical treatment he would be more appreciative of the treatment he has received. In any event, the Court finds this lawsuit to be frivolous."

Appellant filed a timely appeal assigning the following errors for our review:

"*Assignment of Error No. 1*:

"It is an abuse of discretion to dismiss a pro se complaint and amended complaint finding a failure to state a claim and the complaint and amended complaint are frivolous using erroneous facts and law.

"*Assignment of Error No. 2*:

"The trial court abused its discretion not entertaining the declaratory and injunctive relief in the complaint and amended complaint.

"*Assignment of Error No. 3*:

"It is an abuse of discretion for a trial court to show its personal bias against a plaintiff and the court's partiality, which denies the plaintiff rights under the Due Process Clause to 'fair procedures' following *Zimermon* [*Zinermon*] *v. Burch* (1990) [494 U.S. 113, 125], 110 S.Ct. 975, 983 [108 L.Ed.2d 100, 113–114], and a cause of action taken without due process, which is a species of property protected by the Due Process Clause, following *Logan v.* [*Zimmerman Brush Co.*] (1982), 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265, 272–274, and denies the plaintiff of an impartial judge following *Ward v. Village of Monroeville* (1972), 409 U.S. 57, 59–60, 93 S.Ct. 80, 83, 34 L.Ed.2d 267, 270–271."

*ANALYSIS*

We address appellant's assignments of error *seriatim.*

I

Appellant asserts in his first assignment of error that the trial court erred in dismissing his complaint by granting appellees' Civ.R. 12(B)(6) motion.

We note at the outset that, contrary to appellant's assignment of error, appellate review of Civ.R. 12(B)(6) motions does not entail inquiry into whether the lower court abused its discretion. Rather, appellate courts are to conduct a *de novo* review of such motions. The sole inquiry posed by such a motion is whether the complaint *itself* states a legally sufficient claim. This is wholly an issue of law, not fact. "On matters of law—choice, interpretation, or application—our review is, of course, plenary. We give no deference and exercise our right to *de novo* error by looking at the correctness with which the trial court acted." See *Raceway Video & Bookshop v. Cleveland Bd. of Zoning Appeals* (1997), 118 Ohio App.3d 264, 269, 692 N.E.2d 656, 659; see, generally, Whiteside, Ohio Appellate Practice (2001 Ed.) 288 (explaining that "no court is vested with discretion to determine the law"). Therefore, in the case *sub judice,* we must evaluate, entirely independent of the trial court's determination, whether appellant's complaint should have been dismissed.

Civ.R. 12(B)(6), as well as its federal analogue, Fed.R.Civ.P. 12(B)(6), permits a defendant to move to dismiss the plaintiff's complaint on the ground that the complaint failed to state a claim that would entitle the plaintiff to any form of relief. Granting such a motion is a drastic measure: the plaintiff will never have the opportunity to present the case to a jury, let alone demonstrate a legally cognizable injury through the discovery process. See, generally, *Cairns v. Ohio Sav. Bank* (1996), 109 Ohio App.3d 644, 672 N.E.2d 1058 (holding that granting a Civ.R. 12[B][6] motion is a final adjudication).

Recognizing the severity of granting such motions, the Supreme Court of the United States, in *Conley v. Gibson* (1957), 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, held that a complaint should not be dismissed "unless it appears *beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." (Emphasis added.) *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102, 2 L.Ed.2d at 84–85. The Supreme Court of Ohio, in *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 327 N.E.2d 753, adopted the analysis presented by the *Conley* court:

"In construing a complaint upon a motion to dismiss for failure to state a claim, [appellate courts] must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the nonmoving party."

*Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 756; see *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 573 N.E.2d 1063. Thus, in deciding Civ.R. 12(B)(6) motions, trial courts are to construe a plaintiff's complaint liberally, giving every benefit of the doubt to the plaintiff.[4]

Against this backdrop, we revisit the facts, as presented in appellant's complaint, in light of the elements of the claims presented therein.

Section 1983, Title 42, U.S.Code provides private individuals a mechanism to seek relief for violations of federal constitutional rights by state officers acting in their official capacities. See, generally, *Schwarz v. Bd. of Trustees of Ohio State Univ.* (1987), 31 Ohio St.3d 267, 31 OBR 493, 510 N.E.2d 808 (holding that state common pleas courts have jurisdiction over claims seeking prospective injunctive relief against state officers sued in their official capacities brought by way of Section 1983, Title 42, U.S.Code). Appellant claims two such violations: first, denial of proper medical care, a violation of his Eighth Amendment right to be free from cruel and unusual punishment; and second, retaliation, a violation of his First Amendment right to file complaints and grievances.

Additionally, appellant asserted a third claim in his amended complaint: a challenge of disability discrimination.

## A

 While the United States Constitution "does not mandate comfortable prisons," it unquestionably prohibits imprisonment rising to "cruel and unusual punishment." Compare *Rhodes v. Chapman* (1981), 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59, with *Helling v. McKinney* (1993), 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (holding that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment"). The Eighth Amendment imposes the duty on prison officials to provide humane conditions of confinement: to ensure, *inter alia,* that inmates receive adequate food, clothing, shelter, and medical care. See *Hudson v. Palmer* (1984), 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393; accord *Helling,* 509 U.S. at 25, 113 S.Ct. at 2475, 125 L.Ed.2d at 22.

---

4. Indeed, some commentators have argued that the analysis presented in *Conley* has been applied too liberally. "After the adoption of the Federal Rules, key cases stressed the liberal attitude of notice pleading underlying the [Federal Rules of Civil Procedure], often in language that, if taken too literally, would prevent almost any complaint from being dismissed for failure to state a claim pursuant to rule 12(b)(6)." Stempel, A Distorted Mirror: The Supreme Court's Shimmering View of Summary Judgment, Directed Verdict, and the Adjudication Process (1998), 49 Ohio St.L.J. 95 (discussing the analysis from the *Conley* case); see, generally, 5A Wright & Miller, Federal Practice and Procedure (1979) 598–605, Section 1357 (discussing, critically, the relative ease by which litigants can avoid dismissal for failure to state a claim despite the apparent unlikely success the case will have at trial).

The United States Supreme Court, in *Farmer v. Brennan* (1994), 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811, set out the analysis to be used to determine whether the action, or inaction, of prison officials rises to the level of cruel and unusual punishment:

"First, the deprivation alleged must be, objectively, 'sufficiently serious,' * * *; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities,' * * *. For a claim * * * based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' * * *. To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.' * * * In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety * * *." *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977, 128 L.Ed.2d at 823.

Thus, for a plaintiff to survive a Civ.R. 12(B)(6) motion, the complaint must set out (1) a "sufficiently serious" deprivation and (2) facts exhibiting the official's "deliberate indifference" toward the plaintiff.

█ In the case *sub judice*, appellant's complaint spelled out, in meticulous detail, his belief that the effects of CMT disease on his feet have been exacerbated by what he has characterized as indifference to his condition by appellee Oppong and other prison officials. Appellant related that his right foot broke under his own weight because he was wearing incorrect orthopedic shoes prescribed by appellee Oppong. Further, appellant maintained that appellee Oppong forced him to maneuver about the prison on crutches, despite the recommendation of OSUMC's orthopedic clinic that he be in a wheelchair, putting no pressure on his right foot for five weeks. Appellant suggested that it was this decision—to deny appellant a wheelchair and force him to use crutches—that led to his left foot being severely sprained.

Appellant asserted that once his cast on his right foot was removed, it was determined that his foot was still broken. Appellant suggested that because the cast was too tight, his leg was covered in sores. Thus, it was not possible to put another cast on appellant's right foot. Nevertheless, appellant claimed that appellee Oppong insisted that appellant begin walking on his right foot, again denying him access to a wheelchair. Appellant, in his own words, explained that appellee Oppong was "indifferent to my telling him my disease was getting worse and I could not walk." Appellant alleged that he had to hop on his left foot to go to and from the mess hall to eat.

Appellant also recounted appellee Oppong's cancellation of two orders for new orthopedic shoes and leg braces for appellant.

Presuming that these factual allegations, and the inferences reasonably drawn therefrom, are true, we are unable to say that, beyond doubt, appellant would not be entitled to some form of relief.

## B

■■ Prisoners have a First Amendment right to file grievances and complaints against prison officials. See *Gumpl v. Bost* (1993), 88 Ohio App.3d 325, 623 N.E.2d 1291. "[R]etaliation against a prisoner by prison officials for the prisoner's exercise of a constitutionally protected right states a Section 1983 cause of action." *Gumpl*, 88 Ohio App.3d at 328, 623 N.E.2d at 1291; see *Newsom v. Norris* (C.A.6, 1989), 888 F.2d 371; *Cale v. Johnson* (C.A.6, 1988), 861 F.2d 943.

■ In order to state a claim for retaliation, "a prisoner must allege a chronology of events from which retaliation may be inferred." *Gumpl*, 88 Ohio App.3d at 328, 623 N.E.2d at 1291; see *Murphy v. Lane* (C.A.7, 1987), 833 F.2d 106. Further, the prisoner must set forth "operative grounds that reveal the *extent of the injury* that resulted from the retaliation." (Emphasis added.) *Gumpl*, 88 Ohio App.3d at 328, 623 N.E.2d at 1291; see *Ustrak v. Fairman* (C.A.7, 1986), 781 F.2d 573.

■ A perusal of the complaint shows that appellant set forth a chronology of events which, when assumed to be true, could be interpreted as showing that official(s) retaliated against him based on, in his own words, "personal animosity * * * for complaining and filing grievances." The "extent of the injury" caused by this alleged retaliation was, according to appellant's complaint, the denial of appropriate medical care, chiefly, the cancellation of two orders for orthopedic shoes and leg braces, as well as a denial of a wheelchair.

## C

■ Appellant, in his amended complaint, presented a challenge that he was discriminated against because of his disability; specifically, appellant argued that appellees "practiced policy * * * does discriminate against the handicapped and violate[s] clearly established state and federal law."

"This case requires the court to consider once again the difficult problems raised when *pro se* litigants only vaguely identify potential legal issues in the controversy at hand. Though these litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of

those trained in law, neither can * * * courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. Hampton* (C.A.4, 1985), 775 F.2d 1274; accord *Karmasu v. Bendolf* (Sept. 28, 1994), Scioto App. No. 93CA2160, unreported, 1994 WL 529961.

In the instant matter, we are reluctant to infer precisely what appellant is arguing. Nevertheless, whether appellant is arguing a claim under the Americans with Disabilities Act, Section 12132, Title 42, U.S.Code, or some other provision, we find that he did not aver the appropriate facts to survive appellees' Civ.R. 12(B)(6) motion.

While appellant argues that he suffers from CMT disease and that appellee Brunton, and other prison officials, forced him to brave the elements to eat in a separate mess hall, when a perfectly viable mess hall was available in his dormitory, he has failed to aver that he was treated differently from anyone else; according to appellant's amended complaint, all of the inmates had to eat at this mess hall. See *Detzel v. Brush Wellman, Inc.* (2001), 141 Ohio App.3d 474, 751 N.E.2d 1067; accord *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128; *Howe v. Hull* (N.D.Ohio 1994), 873 F.Supp. 72, 78.

Accordingly, presuming that these factual allegations, and the inferences reasonably drawn therefrom, are true, we find that appellant is not entitled to relief on this claim. Therefore, we affirm the trial court's judgment and overrule appellant's assignment of error as it pertains to the amended complaint.

 Notwithstanding our foregoing discussion, we note that the trial court improperly considered the admissibility of appellant's evidence. The trial court based its decision to dismiss appellant's complaint on its impression that "[p]laintiff's complaint is a mere summary of numerous hearsay statements that are unsupported by the evidence." While this may indeed be the case, it is inappropriate, in ruling on a Civ.R. 12(B)(6) motion, to consider the admissibility or likelihood that the plaintiff will be able to prove the factual allegations set out in the complaint. See *Hollingsworth v. Kroger Co.* (Dec. 5, 1988), Warren App. No. CA88–04–031, unreported, 1988 WL 129469 (William W. Young, J., concurring) ("[I]t must appear beyond doubt * * * that the complaining party can prove no set of facts entitling her to relief. * * * While I am not innovative enough to envision such a set of facts, I will not impose my lack of legal dexterity on another."). Rather, courts must assume, for purposes of deciding the motion, that the plaintiff *will* prove them.

We note that such an analysis—evaluating the competence of the evidence—is properly reserved for the review of Civ.R. 56 motions, not, as we have here, the review of a Civ.R. 12(B)(6) motion.

"A motion for summary judgment under Civ.R. 56 is separate and distinct from a motion to dismiss for failure to state a claim under Civ.R. 12(B)(6) and requires consideration of evidentiary materials and factual issues which are not pertinent on dismissal motions. The two should not be confused. * * * A trial court is confined solely to the averments of the petition on a Civ.R. 12(B)(6) motion and cannot consider matters outside the pleadings." *Karmasu, supra*; see *State ex rel. Karmasu v. Tate* (1992), 83 Ohio App.3d 199, 614 N.E.2d 827; *Popson v. Henn* (1984), 17 Ohio App.3d 1, 17 OBR 47, 477 N.E.2d 465.

Appellant's first assignment of error is sustained in part and overruled in part.

## II

■ Appellant asserts in his second assignment of error that the lower court erred in not addressing the claim set out in appellant's amended complaint. Specifically, appellant argues that "default judgment [should] issue against defendant relative to the unopposed and unanswered amended complaint * * *." We find appellant's argument to be without merit.

■ Filing a Civ.R. 12(B)(6) motion is an alternative to answering the complaint. A defendant who files such a motion need not answer the complaint until after the motion is decided. If the defendant prevails on the motion, he or she may never have to answer. See *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 605 N.E.2d 378 (explaining that a Civ.R. 12[B][6] motion is not a responsive pleading); Weissenberger, Ohio Civil Procedure (2001) 127–132, Chapter 15. Thus, as the complaint was dismissed, there was no reason for appellees to respond to the complaint or the amended complaint.

Appellant's second assignment of error is overruled.

## III

■ Appellant argues in his third assignment of error that this court should find the trial judge to be biased and prejudiced against him and seeks assignment of a new judge on remand. Such a challenge is not properly brought before this court. Rather, appellant must make such a challenge under the provisions of R.C. 2701.03, which requires an affidavit of prejudice to be filed with the Supreme Court of Ohio. See *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 8 O.O.3d 438, 377 N.E.2d 775 (explaining that, "[s]ince only the Chief Justice or his designee may hear disqualification matters, [courts of appeals are] without authority to pass upon disqualification or to void the judgment of the trial court upon that basis"); see, generally, *In re Disqualification of Hunter* (1988), 36 Ohio St.3d 607, 522

N.E.2d 461 (stating that "[t]he statutory right to seek disqualification of a judge is an extraordinary remedy not to be used in a frivolous manner").

Appellant's third assignment of error is overruled.

## CONCLUSION

Appellant argues in his first assignment of error that the trial court erred in granting appellees' Civ.R. 12(B)(6) motion, thereby dismissing appellant's complaint. Presuming that the factual allegations set out in appellant's complaint and amended complaint, and the reasonable inferences drawn therefrom, are true, we sustain this assignment of error as to the Eighth Amendment and retaliation claims and overrule it as it pertains to the disability discrimination claim.

Appellant asserts in his second assignment of error that the trial court erred in not entering default judgment in his favor because it failed to address the claim set out in appellant's amended complaint. We overrule this assignment of error because a defendant who files a Civ.R. 12(B)(6) motion need not answer the complaint until after the motion is decided. Thus, because appellees prevailed on their motion, no answer was required of them.

Appellant argues in his third assignment of error that this court should find the trial judge to be biased and prejudiced, seeking assignment of a new judge on remand. We overrule this assignment of error because such a challenge cannot be properly brought before this court. Rather, appellant must make such a challenge pursuant to R.C. 2701.03, which requires an affidavit of prejudice to be filed with the Supreme Court of Ohio, which has exclusive jurisdiction over such matters.

Therefore, the judgment of the Pickaway County Court of Common Pleas is affirmed in part and reversed in part. The cause is remanded for further proceedings not inconsistent with this opinion. Costs herein are taxed equally between the parties.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

PETER B. ABELE, P.J., concurs as to Assignments of Error II and III but concurs in judgment only as to Assignment of Error I.

HARSHA, J., concurs in part and dissents in part.

HARSHA, Judge, concurring in part and dissenting in part.

I concur in judgment and opinion in Parts II and III of the opinion's analysis. However, I dissent from Part I(A) because my reading of the complaint reveals that appellant has alleged facts that may state a cause of medical malpractice but do not, as a matter of law, rise to the level of cruel and unusual punishment. In essence, appellant claims that Dr. Oppong's medical diagnosis and treatment have breached the duty to afford plaintiff reasonable medical care. Notwithstanding appellant's conclusion that Dr. Oppong's course of treatment amounts to cruel and unusual punishment, the Eighth Amendment does not constitutionalize claims that, although properly sounding in state tort law, do not rise to the level of deliberate indifference. See *Warren v. Fanning* (C.A.8, 1991), 950 F.2d 1370; *Snipes v. DeTella* (C.A.7, 1996), 95 F.3d 586; and *Layne v. Vinzant* (C.A.1, 1991), 657 F.2d 468.

Furthermore, I concur in judgment only in Parts I(B) and (C) of the opinion's analysis. Thus, I would allow the appellant to proceed solely on his claim of retaliation against Dr. Oppong for allegedly canceling orders for orthopedic devices because appellant complained about the adequacy of his treatment.