DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Christina Ooten, appeals from the judgment of the Meigs County Court of Common Pleas granting a divorce to Appellant and Appellee, Jeffrey Hirzel (Case No. 06CA10), and also appeals from a separate entry of the same court which ordered the payment of transcript and court costs (07CA13). In her first appeal, Appellant assigns the following errors for our review:
 {¶ 2} "I. THE TRIAL COURT ERRED BY NOT GRANTING CHILD SUPPORT TO THE DEFENDANT.
 {¶ 3} II. THE TRIAL COURT ERRED BY ISSUING A BENCH WARRANT AGAINST THE DEFENDANT FOR THE COLLECTION OF COURT COSTS. *Page 2 
 {¶ 4} III. THE TRIAL COURT ERRED IN ITS DIVISION OF MARITAL ASSETS AND LIABILITIES.
 {¶ 5} IV. THE TRIAL COURT ERRED IN NOT AWARDING SPOUSAL SUPPORT TO THE DEFENDANT.
 {¶ 6} V. THE TRIAL COURT ERRED IN ITS DIVISION OF THE PARTIES' PENSION PLANS."
 {¶ 7} In her second appeal, Appellant assigns the following errors for our review:
 {¶ 8} "I. THE TRIAL COURT ERRED BY ORDERING DEFENDANT/APPELLANT TO PAY THE COSTS OF A COPY OF A TRANSCRIPT WHICH WAS NOT REQUESTED BY THE DEFENDANT/APPELLANT.
 {¶ 9} II. THE TRIAL COURT ERRED BY CALLING ITS OWN EMPLOYEE, SAMANTHA MUGRAGE, AS A WITNESS IN THIS CASE AND EXAMINING MS. MUGRAGE ON THE STAND AND ACTING AS TRIAL JUDGE ACTED [SIC] AS COUNSEL AND JUDGE SIMULTANEOUSLY.
 {¶ 10} III. THE TRIAL COURT ERRED BY OBJECTING TO EXAMINATION OF MS. MUGRAGE BY DEFENSE COUNSEL AND BY INSTRUCTING MS. MUGRAGE NOT TO ANSWER CERTAIN QUESTIONS UNDER EXAMINATION, THUS ACTING AS COUNSEL AND JUDGE SIMULTANEOUSLY.
 {¶ 11} IV. THE TRIAL COURT ERRED BY PURSUING ITS ALLEGED CLAIMS FOR COURT COSTS AND TRANSCRIPT COSTS (MERGED BY THE TRIAL COURT INTO THE COURT COSTS) THROUGH: (A) A CONTEMPT ACTION AGAINST THE DEFENDANT/APPELLANT RATHER THAN BY PURSUING ITS ALLEGED CLAIMS THROUGH COMMON LAW AND STATUTORY LAW PROCEDURES FOR COLLECTION OF A DEBT AND (B) THE THREAT OF DEBTOR'S PRISON AS A MEANS TO COLLECT A JUDGMENT. *Page 3 
 {¶ 12} V. THE TRIAL COURT ERRED BY VIOLATING THE DEFENDANT/APPELLANT'S RIGHT TO DUE PROCESS.
 {¶ 13} VI. THE TRIAL COURT ERRED BY REPEATEDLY INQUIRING INTO PRIVILEGED INFORMATION AND BY ACTING AS BOTH ATTORNEY AND JUDGE.
 {¶ 14} VII. THE TRIAL COURT ERRED BY MAKING RULINGS WHICH THE COURT HAD NO JURISDICTION TO MAKE UNDER CIVIL RULE 75.
 {¶ 15} VIII. THE TRIAL COURT ERRED IN RENDERING JUDGMENT AGAINST THE DEFENDANT/APPELLANT FOR THE COST OF A TRANSCRIPT COPY WHEN NO COMPLAINT HAD BEEN FILED PURSUANT TO CIVIL RULE 3.
 {¶ 16} Finding Appellant's appeal to have merit in part, the judgment of the trial court is affirmed in part, reversed in part, vacated in part, and remanded.
 FACTS {¶ 17} The parties were married on July 22, 1988 and have one child together. Both parties are highly skilled professionals, both educated and trained in the field of computer sciences. After meeting and marrying while working in Columbus, Ohio, for the Department of Defense, the parties decided to cash in their accrued retirements and relocate to Meigs County, where they purchased a ninety-six acre farm and house. Though both parties initially accepted employment with Ohio University in Athens, Ohio, after the move, Appellee eventually moved on to a position at the Bureau of Public Debt in Parkersburg, West Virginia. Meigs App. Nos. 06CA10 07CA13 *Page 4 
 {¶ 18} Appellant suffered a significant injury to her back on May 6, 2000, which led to her inability to work and eventual resignation from her employment with Ohio University. Thereafter, in June of 2002, the parties permanently separated. From the time that Appellant suffered her injury to the time that the parties became separated, Appellee managed the finances of the household. With the exception of a $1000.00 monthly disability benefit received from Ohio University on behalf of Appellant for approximately twenty-four months after her resignation, Appellee paid the mortgage and other household bills primarily out of his salary, as Appellant was no longer employed.
 {¶ 19} Upon separation, Appellant and the parties' child remained in the marital residence. Appellee moved out but continued to pay the mortgage on the marital residence, as well as most of the utilities, with the exception of heat, totaling approximately two thousand dollars per month, until the parties were eventually divorced. Although Appellant, with the assistance of Appellee, applied for social security disability benefits soon after her injury, Appellant did not receive any disability benefits until September 2003, at which time she received a lump sum payment in the amount of $49,084.00, representing back payment of benefits for herself beginning in November of 2000. Subsequently, Appellant also received another lump sum payment in the amount of $31,303.00 representing back *Page 5 
payment of benefits on behalf of the parties' minor child. At the time of the divorce hearing, Appellant was receiving approximately $2300.00 per month in social security disability benefits on behalf of herself and the child.
 {¶ 20} Appellee filed a complaint for divorce in August of 2003; however, that divorce case was jointly dismissed and refiled in February of 2005, with the stipulation that all filings from the prior divorce be incorporated into the refiled action. After a two-day hearing, the trial court granted the divorce, made an award of child support, divided the marital assets and liabilities and refused to award spousal support to either party.
 {¶ 21} Although the trial court determined that Appellee should pay child support in the amount of $905.33 per month, the trial court did not complete its own child support worksheet. While the court apparently referenced and relied on the worksheet submitted by Appellee, it did not expressly state such, nor did it attach that form to its judgment entry or otherwise make it part of the record. Further, after the court determined the amount of child support, it ordered Appellant to continue to pay the mortgage on the marital residence and the lawn care expenses, in lieu of child support, through August of 2009. However, in making this upward deviation in child support, the trial court did not find that the guideline support was unjust, inappropriate or not in the best interest of the child. In addition to ordering Appellee to pay the mortgage on the marital residence *Page 6 
through August of 2009, the trial court also ordered exclusive occupancy of the residence to Appellant and the minor child until that time.
 {¶ 22} In its division of marital property, the trial court determined that the date for the de facto termination of marriage was June of 2002. The court further determined that "[w]ith the exception of the back-pay lump sum social security received during the separation (which the Court finds to be Defendant's replacement income for the period prior to separation) all assets acquired since June 2002 constitute the separate and non-marital property of the parties." Of importance, in dividing the marital property, the trial court awarded Appellee the real estate and improvements, the mortgage on the real estate, his social security benefits, his federal retirement, his OPERS retirement, his Ford pickup truck, and some other miscellaneous items. The trial court awarded Appellant her lump sum social security disability back pay benefits, her daughter's lump sum social security disability back pay benefits, her ING retirement benefits, her social security benefits, her Ford Explorer, the household goods and furnishings and her credit card debt.
 {¶ 23} Then, after concluding that it had made an equitable division of marital and separate property, the trial court considered the issue of spousal support. After considering the factors set forth in R.C. 3105.18, the trial court determined that Appellant "was entitled to some spousal support from *Page 7 
[Appellee]". However, the court further found "that the payment of over $100,000.00 of expenses paid by [Appellee] for which [Appellant] received the benefit over these past fifty (50) months (June 2002 through August 2006) has fully satisfied any spousal support obligation of [Appellee] as well as more than adequately compensated [Appellant] for any additional lump sum equity payment for [Appellee's] retention of the real estate." Thus, having found that the spousal support obligation of Appellee had already been satisfied, the trial court declined to award further spousal support to Appellant. It is from this judgment entry of divorce that Appellant brings her first appeal, identified as appellate case number 06CA10.
 {¶ 24} Appellant has also filed a second appeal, case number 07CA13, which was consolidated with her first appeal, and which deals solely with the conduct of the trial court in attempting to collect the court costs Appellant was ordered to pay in connection with her divorce action. A review of the record reveals that Appellant was ordered to pay her portion of the court costs associated with the divorce on August 31, 2006, at the time the judgment entry of divorce was filed. When court costs had still not been paid on September 19, 2006, not even three weeks later, the trial court issued a judgment entry stating that if costs were not paid by September 25, 2006, a hearing would be held on September 28, 2006 at 9:45 a.m. to show cause why the parties failed to comply with the order to pay court costs. Although *Page 8 
the court sent the notice to Appellant's counsel, there was no continuing representation at that time and there is no indication that Appellant was properly served or had notice of the hearing.
 {¶ 25} When Appellant failed to appear at the September 28, 2006, hearing, the court issued a bench warrant for Appellant's arrest. Finally, after Appellant turned herself in to the Sheriff, a show cause hearing was held on March 5, 2007. The judgment entry issued as a result of that hearing stated that "[t]his matter came on for show cause hearing this 5th day of March 2007, wherein the [Appellant] was ordered to appear to show cause why she has failed to pay the costs herein." The entry further stated that "the [Appellant] and her counsel are ordered to appear at said hearing to determine costs, and to show cause why she should not be held in contempt for failure to pay costs, and why she failed to appear at the September 28, 2006 hearing, and why she failed to timely appear at the March 5, 2007 hearing." Thus, the trial court clearly attempted to use its contempt powers to collect the payment of court costs, and even issued a warrant for Appellant's arrest.
 {¶ 26} Then, on August 27, 2007, the trial court issued another entry merging the costs of the transcript of the appeal of this matter with the unpaid court costs from the underlying divorce action. It is from this entry that Appellant brings her second appeal, challenging the merger of these *Page 9 
costs, and also challenging the trial court's use of its contempt powers to collect court costs. Additionally, Appellant complains of the conduct exhibited by the trial court during the contempt hearing, essentially claiming that the trial court acted as judge and advocate simultaneously.
 ASSIGNMENTS OF ERROR IN CASE NUMBER O6CA10 {¶ 27} In the first assignment of error contained in her first brief, filed in case number O06CA10, Appellant contends that the trial court erred by not granting child support. Appellee counters by asserting that the trial court did grant child support to Appellant, but also ordered that Appellee pay housing costs on the marital residence, including real estate taxes, real estate insurance and lawn mowing services in lieu of cash child support, which ultimately resulted in an upward deviation from the guideline child support of $905.33 per month Appellee was ordered to pay.
 {¶ 28} Specifically, Appellant asserts that the trial court erred in three respects in determining the issue of child support. First, Appellant argues that the trial court erred in including disability income received by Appellant on behalf of the couple's minor child in the child support calculations. Secondly, Appellant argues that the trial court deviated from the support amount as determined under the basic child support schedule without making the required determinations that the scheduled amount was unjust or inappropriate, or that the deviation was in the best interest of the child. *Page 10 
Finally, Appellant argues that the trial court erred in failing to complete or attach to its entry a copy of the child support guidelines worksheet, and that without such, there is no evidence in the record that the trial court calculated the appropriate amount of child support in accordance with the guidelines.
 {¶ 29} In considering the issues raised by Appellant with respect to the issue of child support, we note that we review child-support matters under an abuse-of-discretion standard. See, e.g., Booth v. Booth (1989),44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion "connotes more than an error of law or judgment; rather, it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse-of-discretion standard of review, appellate courts must not substitute their judgment for that of the trial courts. See, e.g., In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 138,566 N.E.2d 1181. Furthermore, an appellate court must presume that the findings of the trial court are correct because the finder of fact is best able to observe the witnesses and to use those observations to weigh witness credibility. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81,461 N.E.2d 1273; see, also, Mahlerwein v. Mahlerwein160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, at ¶ 19.
 {¶ 30} R.C. 3119.022 governs the procedure for awarding and calculating child support. The statute's overriding concern is to ensure the *Page 11 
best interest of the child for whom support is being awarded. Rock v.Cabral (1993), 67 Ohio St.3d 108, 110, 616 N.E.2d 218. Thus, the statute's provisions are mandatory in nature and courts must follow the statute literally and technically in all material aspects. Marker v.Grimm (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, paragraph two of the syllabus; see, also, Albright v. Albright, Lawrence App. No. 06CA35,2007-Ohio-3709, at ¶ 7. If a trial court makes the proper calculations on the applicable worksheet, the amount shown is "rebuttably presumed" to be the correct amount of child support due. See Rock, supra, at 110;Albright; see, also, R.C. 3119.03.
 {¶ 31} In calculating child support, the trial court's starting point is the obligor's "income." See Murray v. Murray (1999),128 Ohio App.3d 662, 666, 716 N.E.2d 288. "R.C. 3119.01(C)(5) defines income in two ways. For individuals employed to full capacity, income means `the gross income of the parent.' R.C. 3119.01(C)(5)(a). For persons who are unemployed or underemployed, income means the parent's gross income plus any potential income. R.C. 3119.01(C)(5)(b). Further, R.C. 3119.01(C)(7) broadly defines gross income to mean:
* * * [T]he total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; *Page 12 
royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement,disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income. * * * (Emphasis added).
 {¶ 32} In the instant case, Appellant contends that the trial court improperly included social security disability benefits received by her on behalf of her minor child in calculating child support. A review of the record reveals that both Appellant and Appellee submitted proposed child support computation worksheets to the court. Appellant's worksheet claimed that Appellee's annual gross income was $114,311.00, that Appellant's annual gross income was $27,600.00, and that monthly child support should be set at $1000.81. Thus, the income figure provided by Appellant herself included, as her income, the social security disability benefits received on behalf of the child.[1] Appellee's proposed worksheet also listed Appellant's income as $27,600.00, but listed Appellee's income *Page 13 
as $105,752.80, with a monthly child support figure of $905.33, which calculation was apparently relied upon by the trial court.
 {¶ 33} Under the doctrine of invited error, a party may not take advantage of an error that he invited or induced the trial court to make. State v. Bey (1999), 85 Ohio St.3d 487, 493, 1993-Ohio-283,709 N.E.2d 484. Here, Appellant submitted a proposed child support computation worksheet to the court which included as income monies which she now claims should not have been included. The Ohio Supreme Court has held that "[A] litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible." State v. Kollar (1915), 93 Ohio St. 89,91, 112 N.E. 196. Furthermore, we are not persuaded that the inclusion of the social security disability benefits received by Appellant on behalf of her child was in error.
 {¶ 34} Although Appellant has cited this Court to the reasoning set forth in Cervone v. Cervone, Mahoning App. No. 98CA99, 2000 WL 126583 in support of her proposition that social security derivative payments received on behalf of a minor child as a result of a parent's disability should not be added to the income of either parent in making guideline determination of support, we are not bound by that decision, and, in fact, find to be more persuasive the reasoning set forth in Huff v.Huff Summit *Page 14 
App. No. 20934, 2003-Ohio-1304. In Huff, the Ninth District Court of Appeals reasoned as follows:
"Recently, the Ohio Supreme Court found that `the underlying intent behind Social Security payments to a child is to provide support that the disabled parent is unable to provide. Thus, Social Security benefits are characterized as a substitute for the disabled parent's earnings [.]' Williams v. Williams (2000), 88 Ohio St.3d 441, 443,727 N.E.2d 895. The Court further explained that Social Security benefits are earned by the disabled parent, as they represent contributions that a worker has made throughout the course of employment. Id. See, also,Carpenter v. Reis (1996), 109 Ohio App.3d 499, 505, 672 N.E.2d 702. Consequently, `the Social Security payments are deemed income of the disabled parent that enure to the sole benefit of the child[;] Social Security payments are tantamount to earnings by the disabled parent.'Williams, 88 Ohio St.3d at 443, 444, 727 N.E.2d 895."
 {¶ 35} Just as the court reasoned in Huff, we believe that the trial court could have correctly concluded that the social security disability payments received by the minor child should be included in Appellant's income for the calculation of child support obligations. Id at ¶ 14. As the trial court's calculation appears to be supported by the language in the pertinent Revised Code sections and the findings and analysis inWilliams, we are unable to conclude that the trial court abused its discretion when calculating *Page 15 
Appellant's income for child support purposes. However, this does not end our inquiry.
 {¶ 36} Appellant contends, in the second and third issues raised under her first assignment of error, that the trial court erred in not making the required determinations before deviating from the guideline child support, and also erred in failing to complete or include a copy of the child support guidelines worksheet in the record. Although we have concluded that the trial court did not abuse its discretion in attributing the child's social security disability benefits to Appellant for purposes of calculating child support, we believe that these latter issues raised by Appellant have merit.
 {¶ 37} Appellant contends that the trial court erred in ordering a deviation from the guideline child support calculation without making the requisite finding that the guideline calculation would be unjust, inappropriate, or not in the best interest of the child. Pursuant to R.C. 3119.03, "* * * the amount of child support that would be payable under a child support order * * * is rebuttably presumed to be the correct amount of child support due." However, R.C. 3119.22 authorizes the court to order child support in an amount that deviates from the guideline worksheet "if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated * * * would be unjust or inappropriate and would not be in the best interest of the child." *Page 16 
The statute further provides that if the court deviates from the child support guideline, it "must enter in the journal the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, * * * its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination." Id. See, also, Marker v. Grimm, supra, paragraph three of the syllabus;Bishop v. Bishop, Scioto App. No. 03CA2908, 2004-Ohio-4643.
 {¶ 38} Here, the trial court found that the child support guideline worksheet established Appellee's child support obligation to be $905.33 per month plus administrative fees. The trial court then ordered that Appellee, "in lieu of wage withholding child support * * * shall pay the $1300.00 monthly mortgage and the annual lawn service, approximately $144.00 per month, for the marital home." While the court explained that its reasoning for making the order was "to honor the request of the [Appellant] and the minor child" that they be permitted to remain in the house, the trial court failed to make the requisite determinations that the guideline support calculation was unjust, inappropriate, and not in the best interest of the parties' child as required by R.C. 3119.22. Accordingly, we agree with Appellant and sustain her first assignment of error as it relates to this argument. *Page 17 
 {¶ 39} Appellant also argues that the trial court erred in failing to complete and make part of the record the child support guidelines worksheet, citing Marker v. Grimm in support. As set forth above, we ordinarily review child support matters under the abuse of discretion standard. Booth v. Booth, supra. However, the Ohio Supreme Court has held that: (1) The child support guidelines require a trial court to complete a child support computation worksheet and include it in the record. (2) This requirement is mandatory and must be literally and technically followed. (3) The court must enter any deviation from the applicable worksheet and the basic child support schedule in its journal and must include findings of fact to support such determination.DePalmo v. DePalmo, 78 Ohio St.3d 535, 538, 1997-Ohio-184,679 N.E.2d 266; citing Marker v. Grimm, supra, paragraphs one through three of the syllabus. See, also, Long v. Long, 162 Ohio App.3d 422, 2005-Ohio-4052,833 N.E.2d 809, at ¶ 9; Murral v. Thomson, Hocking App. 03CA8,2004-Ohio-432, at ¶ 17.
 {¶ 40} Although there are two different child support computation worksheets in the record, neither of them were completed by the trial court. One was completed by Appellant, one was completed by Appellee, and neither of them were signed or dated by the parties or the court. See, Wellman v. Munyan, Scioto App. No. 99CA2638, 2000 WL 807279. Although the trial court appears to have relied on the worksheet submitted *Page 18 
by Appellee, it did not adopt this worksheet in its entry, complete its own worksheet or attach the worksheet to the entry thereby making it a part of the record. Thus, we sustain Appellant's first assignment of error as it relates to this argument as well. Accordingly, we reverse the trial court's determination of child support and remand this matter for further findings consistent with this opinion.
 {¶ 41} We next address Appellant's third assignment of error out of order.[2] In her third assignment of error, Appellant contends that the trial court erred in its division of marital assets and liabilities. Specifically, Appellant contends that the trial court erred in including the lump sum social security disability benefits that she received for herself and her child in the calculations regarding the division of marital property. Appellant also asserts that even if the trial court properly considered the lump sum disability payment received on behalf of the child that it failed to acknowledge that part of the lump sum received was for the period after the de facto termination of marriage. Appellant further asserts that the trial court erred in not taking into consideration the $24,000.00 in disability Appellee received on Appellant's behalf from her former employer, and also erred in awarding 100% of the equity in the marital residence to Appellee, *Page 19 
when Appellant and Appellee both emptied their retirement accounts in order to purchase the residence. Finally, Appellant asserts that the trial court erred in determining that the credit card debts at issue were entirely her responsibility. Appellee disagrees with Appellant's contentions and argues that because Appellant failed to assert that the lump sum payments were separate property at the trial level, that she is precluded from doing so now.
 {¶ 42} "It is well-settled that trial courts enjoy broad discretion in awarding spousal support." White v. White, Gallia App. No. 03CA11,2003-Ohio-6316, at ¶ 21, citing Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 67, 554 N.E.2d 83. "A court's decision to award spousal support will not be reversed on appeal absent an abuse of discretion." White
at ¶ 21, citing Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 24,550 N.E.2d 178. Under the abuse of discretion standard of review, a reviewing court must affirm the decision of the trial court unless it is unreasonable, arbitrary, or unconscionable. Blakemore at 219; Addington v.Addington, Scioto App. No. 05CA3034, 2006-Ohio-4871, at ¶ 8. "Under this highly deferential standard of review, appellate courts may not freely substitute their judgment for that of the trial court."Addington at ¶ 8. "Indeed, to show an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise *Page 20 
of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." White v. White, supra, at ¶ 25.
 {¶ 43} In the view of this Court, it appears that each and every issue raised by Appellant under this assignment of error stems from the trial court's consideration of her receipt of a lump sum social security disability payment. The trial court, in considering the total assets and liabilities of the parties, took into consideration the $81,000.00 lump sum received by Appellant, and then divided the remaining assets and liabilities accordingly. Thus, it appears that if the court had not considered these lump sum payments, each and every issue raised here by Appellant may have been determined differently. Thus, we must begin by determining whether the trial court abused its discretion in its consideration of the lump sum payments received by Appellant when dividing the marital assets and liabilities.
 {¶ 44} Appellant asserts that social security disability lump-sum payments are not marital property subject to equitable division, relying on Watral v. Watral, Medina App. No. 05CA0017-M, 2005-Ohio-6917, in support. Appellant further relies on Hoyt v. Hoyt, 53 Ohio St.3d 177,559 N.E.2d 1292, which noted that social security benefits and disability retirement pay are excluded from the general rule that "pension or retirement benefits earned during the course of marriage are marital assets and a factor *Page 21 
to be considered not only in the division of property, but also in relationship to an award of alimony." Hoyt at pp. 178-179, fn. 3. We agree and conclude, based upon the reasoning of these cases, that social security lump sum payments are not marital assets subject to division, nor are they to be considered in the division of property. See, also,Watson v. Watson, Franklin App. No. 03AP-104, 2003-Ohio-6350;Williams v. Williams (2000), 88 Ohio St.3d 441, 2000-Ohio-375,727 N.E.2d 895 (reasoning that social security disability benefits received on behalf of a minor child should not have been considered in calculations regarding division of marital property); Parr v. Parr (Mar. 6, 1997), Cuyahoga App. No. 70300, 1997 WL 97231.
 {¶ 45} Here, the trial court did not attempt to divide the lump sum payments received by Appellant, but instead used them as a setoff against other property it awarded to Appellee. However, we find persuasive Appellee's argument that because Appellant did not assert that these lump sum payments were separate property at the trial level, she is precluded from doing so now. Although Appellant testified at length during the divorce hearings regarding her receipt of these lump sum payments, she at no time asserted they were non-marital, separate property. Likewise, Appellant failed to claim that these payments were separate property in her trial brief that was submitted to the trial court after the hearings, but prior to a decision *Page 22 
being rendered. Thus, the trial court found that "[w]ith the exception of the back-pay lump sum social security received during the separation (which the Court finds to Defendant's replacement income for the period prior to separation) all assets acquired since June 2002 constitute the separate and non-marital property of the parties."
 {¶ 46} Further, a review of the record reveals that the trial court made reference to Appellant's receipt of the lump sum payments several times in its division of the marital property. For instance, in awarding Appellee all of the $70,000.00 equity in the marital estate, the trial court expressly stated that such award "shall be more than equitably off-set by the $81,000.00 back social security disability received by and controlled exclusively by Defendant since the separation and the value Defendant has received in the $100,000.00 paid by Plaintiff so that Defendant and the child could remain in the marital residence. The excess value received by Defendant as set forth above further explains the division of retirement accounts and debts set forth herein." With respect to allocating all of the credit card debt to Appellant, the trial court reasoned that "[s]aid credit card bills could have and should have been paid by Defendant upon receipt of her lump sum back social security disability benefits. This is especially true since the Plaintiff was paying virtually all the expenses of the household, other than groceries *Page 23 
and gasoline."[3] Thus, Appellant's receipt of these lump sum payments appears to have been an important factor in the trial court's overall division of marital assets and liabilities, including each and every issue raised by Appellant under this assignment of error.
 {¶ 47} We will not consider any error a party failed to bring to the trial court's attention at a time when the trial court could have avoided or corrected the error. Bishop v. Bishop, supra; citingSchade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207, 210,436 N.E.2d 1001. It is axiomatic that a litigant's failure to raise an issue in the trial court waives the litigant's right to raise that issue on appeal.Shover v. Cordis Corp. (1991), 61 Ohio St.3d 213, 220, 574 N.E.2d 457, overruled on other grounds in Collins v. Sotka (1998),81 Ohio St.3d 506, 692 N.E.2d 581. Because Appellant failed to assert that these lump sum payments were her separate property, which she was required to allege and had the burden of proving, we find that she has waived her right to raise this issue now. Hurte v. Hurte (2005),164 Ohio App.3d 446, 2005-Ohio-5967, 842 N.E.2d 1058; Eddy v. Eddy, Washington *Page 24 
App. No. 01CA20, 2002-Ohio-4345. Accordingly, we overrule Appellant's third assignment of error.
 {¶ 48} In her fourth assignment of error, Appellant contends that the trial court erred in not awarding spousal support to her. Appellant argues that her fall and injuries as a result therefrom should have been the critical element in the determination of spousal support and that the trial court erred in finding that she had not followed the medical advice of her physician. Appellant also argues that the trial court did not seriously consider the substantial imbalance in the parties' relative expectancies of inheritance. Appellee counters by arguing that the trial court did not abuse its discretion in failing to award spousal support. A review of the judgment entry of divorce reveals that the trial court found, "based upon application of the above factors [R.C. 3105.18(C)(1)], the [Appellant] was entitled to some spousal support from [Appellee]. However, the trial court further found that "the payment of over $100,000.00 of expenses paid by [Appellee] for which [Appellant] received the benefit over these past fifty (50) months (June 2002 through August 2006) has fully satisfied any spousal support obligation of [Appellee]." Thus, it appears that the trial court did find that spousal support would have been warranted, but also found that the obligation had already been satisfied as a result of the $100,000.00 worth of mortgage and *Page 25 
household expenses Appellee had paid since the de facto termination of the marriage, which occurred in June of 2002.
 {¶ 49} Initially, we address the proper standard of review with respect to the trial court's determination regarding spousal support. "It is well-settled that trial courts enjoy broad discretion in awarding spousal support." White v. White, supra, at ¶ 21, citingKunkle, supra at 67. "A court's decision to award spousal support will not be reversed on appeal absent an abuse of discretion." White
at ¶ 21, citing Bechtol, supra at 24. Under the abuse of discretion standard of review, a reviewing court must affirm the decision of the trial court unless it is unreasonable, arbitrary, or unconscionable.Blakemore at 219; Addington at ¶ 8. "Under this highly deferential standard of review, appellate courts may not freely substitute their judgment for that of the trial court." Addington at ¶ 8. "Indeed, to show an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." White at ¶ 25.
 {¶ 50} Here, the trial court considered the appropriate factors in arriving at its decision with respect to whether spousal support should be awarded. After considering those factors, the trial court explained in its judgment entry that it found that spousal support would have been *Page 26 
appropriate, but for the fact that Appellant had essentially been receiving spousal support from Appellee for the past fifty months through in-kind payments of the mortgage on the marital residence and other expenses, totaling over $100,000.00. Thus, no further award was made. Based upon this reasoning, we cannot conclude that the trial court's decision was unreasonable, arbitrary or unconscionable. Because we find that the trial court did not abuse its discretion in failing to order spousal support be paid to Appellant, we overrule Appellant's fourth assignment of error and affirm the decision of the trial court as it relates to this issue.
 {¶ 51} In her fifth assignment of error, Appellant contends that the trial court erred in its division of the parties' pension plans. Appellee asserts that the division of marital property was equitable in light of Appellee's payment of housing and benefits for Appellant's benefit for over four years, Appellee's assumption of the debts in the allocation of the property, as well as the lump sum cash distribution of $10,000.00 the court ordered Appellee to pay to Appellant when she vacates the marital residence. For the same reasons that we determined that the trial court did not err in its overall division of marital assets and liabilities considered under Appellant's third assignment of error, we conclude that the trial court did not err in its division of the parties' pension plans. *Page 27 
 {¶ 52} As we discussed during our analysis of Appellant's third assignment of error, the trial court expressly found that Appellant's receipt of two lump sum social security disability payments totaling $81,000.00 was a factor in its division of marital assets and liabilities and "further explains the division of retirement accounts." Appellant's failure under her third assignment of error to claim and prove that these lump sum payments were separate property not subject to division is fatal to her arguments under this assignment of error. Accordingly, we cannot conclude that the trial court abused its discretion in its division of the parties' retirement accounts and therefore we must overrule Appellant's fifth assignment of error.
 {¶ 53} Finally, we address Appellant's second assignment of error. In her second assignment of error, Appellant contends that the trial court erred by issuing a bench warrant against her for the collection of court costs. Appellant asserts that she could not legally be held in contempt, arrested and imprisoned for failure to pay court costs, which, she contends, is a debt in a civil action. In support of her contention, Appellant relies on Article I, Section 15 of the Ohio Constitution, as well as this Court's prior reasoning on this issue.
 {¶ 54} A review of the record reveals that the trial court sua sponte scheduled a hearing on Appellant's failure to pay court costs from the divorce action. There is no evidence in the record that Appellant was *Page 28 
properly served with notice of the hearing. When Appellant failed to appear for the hearing, the trial court issued a bench warrant for her arrest. When Appellant finally turned herself in, the trial court, indeed, held a contempt hearing wherein Appellant "was ordered to appear to show cause why she has failed to pay the costs herein." Thus, the trial court attempted to arrest and hold Appellant in contempt for her failure to pay the court costs associated with her divorce action.
 {¶ 55} Such action by the court and any corresponding judgment is contrary to law and is constitutionally prohibited. In Strattman v.Studt (1969), 20 Ohio St.2d 95, 253 N.E.2d 749, the court held in syllabus language as follows:
6. "The duty to pay court costs is a civil obligation arising from an implied contract."
7. "Obligations arising upon implied contracts and judgments thereon are debts, within the purview of Section 15, Article I of the Ohio Constitution, which forbids imprisonment for debt in civil actions. (Paragraph one of the syllabus of Second National Bank of Sandusky v.Becker, 62 Ohio St. 289, approved and followed.)"
 {¶ 56} Further, In State v. Glasscock (1993), 91 Ohio App.3d 520,632 N.E.2d 1328, this Court followed Strattman, supra, by holding that since court costs are civil obligations for which imprisonment is not justifiable and *Page 29 
collectable only by process for collection of civil judgments, a court could not order the costs paid by performance of community service.
 {¶ 57} In light of the foregoing case law, we agree with Appellant and hold that the trial court erred in issuing a bench warrant and attempting to use its contempt powers to enforce Appellant's civil obligation to pay court costs. A contempt hearing is an improper mechanism to attempt to collect payment of court costs, which are collectable only by process for collection of civil judgments.Glasscock, supra. Accordingly, we sustain Appellant's second assignment of error and hold that each order or entry issued by the trial court as a result of the contempt hearing, which orders Appellant's arrest, holds her in contempt and further orders transcript costs to be merged with court costs is vacated.
 ASSIGNMENTS OF ERROR IN CASE NUMBER 07CA13 {¶ 58} As explained above, Appellant has filed two appeals, which have been consolidated, and which stem from separate judgment entries issued by the trial court. The assignments of error contained in Appellant's second appeal deal exclusively with the trial court's attempt to collect court costs associated with Appellant's divorce action. In the first assignment of error contained in Appellant's second appeal, Appellant contends that the trial court erred by ordering her to pay the costs of a copy of a transcript which was not requested by her. Specifically, Appellant asserts that the trial *Page 30 
court erred in two ways: 1) by merging the transcript costs with the court costs; and 2) by ordering Appellant to pay court reporter fees for a copy of a transcript which she did not order from the court reporter.[4]
 {¶ 59} We first must note that in light of our disposition of Appellant's second assignment of error filed in her first appeal, which concluded that the contempt hearing at issue was an inappropriate means of attempting to collect court costs, this current assignment of error is arguably rendered moot. However, we will briefly address the issue of whether or not the trial court properly ordered the costs of the transcript on appeal be merged with the court costs from the underlying divorce action.
 {¶ 60} In answer to this question, we conclude that the trial court erred, initially by holding the contempt hearing in the first place, and also by merging the transcript costs on appeal with the court costs from the underlying divorce action. As reasoned by the court in In reForfeiture of a 1985 Chevrolet Corvette, R.C. 2502.08 provides that the cost of a transcript constitutes a cost of the appeal only with regard to administrative appeals. (1989), 65 Ohio App.3d 164, 583 N.E.2d 356. Though not identical to the question presented here, we believe that the intent of the legislature was to draw a distinction between court costs and transcript costs, except in the case *Page 31 
of administrative appeals. Id. Thus, we sustain Appellant's first assignment of error as it relates to this argument. The remaining argument raised under this assignment of error has been rendered moot in light of our decision to vacate all orders issued as a result of the inappropriately held contempt hearing.
 {¶ 61} We next address, although out of order, Appellant's fourth assignment of error contained in her second appeal. In this assignment of error, Appellant contends that the trial court erred by pursuing its alleged claims for court costs and transcript costs through a contempt action and by the threat of debtor's prison. This assignment of error is essentially identical to Appellant's second assignment of error contained in her first appeal. As such, and for the same reasons that we sustained that assignment of error, we sustain this assignment of error and accordingly vacate all orders issued by the trial court which either ordered Appellant's arrest or held Appellant in contempt for non-payment of court costs.
 {¶ 62} Appellant's second, third, fifth, sixth, seventh and eighth assignments of error all complain of the trial court's conduct during the contempt hearing that was held. In light of our determination that the trial court improperly attempted to use its contempt powers for collection of court costs, as well as our decision to vacate all orders flowing from that hearing, Appellant's remaining assignments of error have been rendered moot. Thus, *Page 32 
we will not address them. Nevertheless, we take this opportunity to remind counsel and the court of the duty of the tribunal to remain impartial and unbiased in the proceedings, as well as the proper avenue for addressing inappropriate judicial action. This Court recently explained, in In the Matter of the Adoption of C.M.H., that "[j]udicial bias is `a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by law and the facts.' State ex rel. Pratt v. Weygandt (1956),164 Ohio St. 463, 132 N.E.2d 191, paragraph four of the syllabus. See, also,Cleveland Bar Association v. Cleary (2001), 93 Ohio St.3d 191, 201,754 N.E.2d 235." Hocking App. No. 07CA23, 2008-Ohio-1694.
 {¶ 63} As noted in In the Matter of the Adoption of C.M.H., supra, we have previously held that such challenges of judicial prejudice and bias are not properly brought before this Court. "Rather, [A]ppellant must make such a challenge under the provisions of R.C. 2701.03, which requires an affidavit of prejudice to be filed with the Supreme Court of Ohio." Baker v. Ohio Department of Rehabilitation and Correction,144 Ohio App. 3d 740, 754, 2001-Ohio-2553, 761 N.E.2d 667. Courts of appeal lack authority to void the judgment of a trial court on such basis. Id. As such, although we *Page 33 
have already vacated the judgments issued by the court on other grounds, we cannot void them based on a claim of prejudice or bias.
 {¶ 64} Further, with respect to the trial court's interrogation of its own court reporter during the contempt hearing, we note that "[t]he right to question witnesses pursuant to Evid. R. 614(B) rests within the sound discretion of the trial court." State v. Williams (Dec. 24, 1998), Trumbull App. No. 97-T0148, 1998 WL 964576 citing State v. Lewis (1993),67 Ohio St.3d 200, 203, 616 N.E.2d 921; State v. Thompson (1987),33 Ohio St.3d 1, 13, 514 N.E.2d 407; State v. Prokos (1993),91 Ohio App.3d 39, 44, 631 N.E.2d 684. "Thus, the standard of review on appeal is whether the trial court abused its discretion in eliciting responses from a witness." Id., citing State v. Davis (1992), 79 Ohio App.3d 450,454, 607 N.E.2d 543. "[A] trial court abuses its discretion when it exhibits an unreasonable, arbitrary, or unconscionable attitude." Id., citing State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 65} Here, the trial court inappropriately scheduled a sua sponte contempt hearing requiring Appellant to show cause why she had failed to pay her court costs. At the hearing, the court further went on to call its own employee as a witness against Appellant. The court then questioned its own employee, objected to questioning of the witness by Appellant's counsel and instructed the witness not to answer certain questions. The court also *Page 34 
questioned Appellant during the hearing and placed her in a difficult situation. For example, the following exchange took place during the hearing:
"COURT: Did anybody pay the, your attorney . . .
MR. STORY: Your Honor that is privileged information.
COURT: . . . on your, on your behalf?
MR. STORY: I'm going to instruct my client not to answer that Your Honor.
COURT: Alright. Then you don't answer. You're not answering?
MS. OOTEN: I'm sorry, I don't know exactly what you're wanting sir.
COURT: I want to know did somebody give Mr. Story a bunch of money to prosecute this appeal?
MS. OOTEN: No.
COURT: You're sure?
MS. OOTEN: Nope, I'm not even sure the appeal's finished. I, I had to take all of my disability check for the first thousand for the transcripts and I have no way of getting the rest. I have no water, I have no uh . . .
COURT: How much by the way have you paid for the transcript?
MS. OOTEN: $1,000.00 and that was a whole . . .
MR. STORY: Your Honor I'm going to instruct my client not to answer those kind of questions.
COURT: Well then she needs to listen to you or talk to me, I don't care which she does, but do you want to talk to me or are you going to listen to what the attorney says? *Page 35 
MR. STORY: This is privileged information Your Honor. You're, you're asking my client, you're inquiring into an area that's protected by law.
COURT: And she can tell me she doesn't want to answer it.
MS. OOTEN: Okay.
MR. STORY: Don't answer.
COURT: Do you want to answer it or you don't want to answer it? MS. OOTEN: I don't know. I'm willing to do whatever I'm supposed to do.
COURT: Well you've got an attorney there. It won't hurt you not to answer it . . .
MR. STORY: This is, this is privileged information Your Honor.
COURT: If you chose not to.
MR. STORY: I'm instructing her not to answer it.
MS. OOTEN: Okay.
COURT: Then you refuse to answer?
MS. OOTEN: Uh, yes.
COURT: Okay, that's fine.
MS. OOTEN: I don't . . .
COURT: So what's your position as to uh, the uh, transcript cost Mr. Story?"
 {¶ 66} As demonstrated by the foregoing excerpt from the contempt hearing, the trial court continued to question Appellant despite counsel's repeated objections based on attorney-client privilege. While "[t]here seems *Page 36 
to be little argument that ordinarily attorney-client privilege is not applicable to a client's identity or documents concerning payment of legal fees," several of the federal circuits have created exceptions to this general rule. In the Matter of Subpoena Duces Tecum Served UponAttorney John F. Potts, Lucas App. No. L-01-1033, 2002-Ohio-2050; citingUnited States v. Hodgson (C.A. 10 1974), 492 F.2d 1175, 1177; In ReGrand Jury Subpoena-Anderson (C.A.10 1990), 906 F.2d 1485, 1488. Thus, as recognized in State v. Lentz, Lucas App. No. L-01-1461, 2003-Ohio-1038, whether attorney fee information is subject to disclosure is an unsettled area of the law. Further, the Supreme Court of Ohio has held that "[w]hen a party claims that subpoenaed documents are privileged, a trial court shall conduct an in-camera inspection of the documents in question before ruling on any claims of privilege."In re Subpoena Duces Tecum Served Upon Attorney Potts,100 Ohio St.3d 97, 2003-Ohio-5234, 796 NE.2d 915, paragraph two of the syllabus (involving a consideration of a motion to quash a subpoena duces tecum requesting attorney fee agreements, amounts, dates paid and forms of payment).
 {¶ 67} In the case sub judice, the trial court, rather than opposing counsel, was the requestor of attorney fee information claimed to be protected by attorney-client privilege. Once that privilege was invoked, it would have been the duty of the trial court to conduct an in camera *Page 37 
inspection of the information before allowing it to be admitted. Such a review did not take place, and even if it had, a conflict would have existed as the court would have been in the dual role of requesting and reviewing the arguably protected fee information. Further, the trial court expressly required Appellant to choose between following the advice of her counsel and answering the questions posed by the court itself which we find is an abuse of discretion.
 {¶ 68} Accordingly, we affirm in part, reverse in part and vacate in part the decision of the trial court.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND VACATED IN PART.
[1] As noted above, it was determined that Appellant receives approximately $2300.00 per month in social security disability benefits for herself and her child, resulting in a yearly benefit of $27,600.00.
[2] Because the second assignment of error contained in Appellant's brief filed in case number 06CA10 is more closely related to the assignments of error contained in Appellant's brief filed in case number 07CA13, we will address that assignment of error out of order and in conjunction with the assignments of error in case number 07CA13.
[3] Testimony was offered during the divorce hearings that Appellee did, in fact, receive a $1,000.00 monthly disability benefit, paid on behalf of Appellant by her former employer. However, testimony was also offered that during the time Appellee was receiving this benefit, he was paying all of the expenses of the household. There was no indication by Appellant or Appellee at the trial level that Appellee misappropriated these funds or used them for anything other than household expenses for the marital residence. In fact, a review of the record indicates that these funds were actually paid when Appellee was still residing in the marital residence, prior to the de facto termination of marriage date as determined by the court.
[4] Appellant concedes that her counsel ordered that the transcript be sent to the Court of Appeals as part of her current appeal; however, Appellant and her counsel deny that a copy of the transcript was also ordered. It is the trial court's order which included the costs for a "copy" of the transcript, as well the court's order that the transcript costs and the court costs be merged that Appellant appeals.