DECISION AND JUDGMENT ENTRY
{¶ 1} Charles J. Handschumaker (hereinafter "Charles") appeals the decision of the Washington County Court of Common Pleas, which granted his divorce from Sundena June Handschumaker (hereinafter "Sundena"). On appeal, Charles contends that the trial court erred by awarding spousal support to Sundena for an indefinite duration. Because the trial court adequately reviewed the relevant factors under R.C. 3105.18(C)(1), and because this was a marriage of a long duration, we disagree. Charles further contends that the trial court erred in calculating the amount of spousal support awarded to Sundena. Because the trial court did not indicate the basis for the award in sufficient detail to enable us to determine whether the award is fair, equitable and in accordance with the law, we find merit in this argument. Accordingly, we affirm, in part, and *Page 2 
reverse, in part, the judgment of the trial court. We remand this cause to the trial court with the instruction for the trial court to indicate the basis (in sufficient detail) of its spousal support award.
 I. {¶ 2} Charles and Sundena were married on April 21, 1979. The couple has three children, all of whom are emancipated adults. On August 1, 2007, Charles filed for divorce, claiming incompatibility.
 {¶ 3} Charles and Sundena are both high school graduates. For the entire marriage, Charles worked at the same food company. Except for two long sabbaticals, Sundena also worked outside of the home throughout the marriage. Starting in 1984, she stopped working for approximately five years to care for the couple's children. And after Sundena injured her back in 1992, she took another five years off work.
 {¶ 4} Sundena had very little control over the family finances, especially for the last six years of the marriage. She used her earnings to pay for groceries and other necessities while Charles spent his money on alcohol, guns, and toy tractors. As a result, Sundena has no savings or money for retirement. Charles, on the other hand, has a pension through his long-term employment with the food company.
 {¶ 5} At the time of the divorce hearing, Charles earned approximately $580 a week in gross wages. However, Sundena was laid off on December 31, 2007 and afterwards received unemployment benefits. *Page 3 
 {¶ 6} Sundena suffers from diabetes, high blood pressure, and depression. She takes prescription medication to treat these ailments. Health insurance had covered Sundena's medications, but she would no longer have the health insurance coverage after the divorce.
 {¶ 7} In 1983, the couple purchased a mobile home. For the rest of the marriage, they lived in that mobile home on two acres of property. The property was once a part of Charles's family farm, and Charles's mother deeded the property to Charles in his name alone.
 {¶ 8} Approximately six months before Charles filed for divorce, Sundena left the family home to care for her sick mother. Upon Sundena's return, she discovered that Charles had a girlfriend. This caused Sundena to permanently move out of the family home. At the time of the hearing, Charles still lived in the mobile home with an adult son.
 {¶ 9} After a February 11, 2008 hearing, the trial court granted Charles a divorce on the stipulated ground of incompatibility. After dividing the marital property, including Charles's pension, the trial court made the following award of spousal support:
"[Charles] shall pay the sum of $700.00 per month, plus the statutory fee in the sum of $14.00 per month, for a total of $714.00 per month as and for spousal support until the occurrence of any of the following events:
A. [Sundena] dies;
B. [Sundena] remarries or cohabits with an unrelated persons [sic] in a state similar to marriage; or *Page 4 
C. [Sundena] receives full Social Security retirement benefits."
 {¶ 10} Charles appeals, asserting the following assignments of error: I. "THE LOWER COURT ERRED IN GRANTING DEFENDANT-APPELLEE PERMANENT ALIMONY WITH NO TERMINATION DATE." And, II. "THE LOWER COURT ERRED IN ITS CALCULATION OF SPOUSAL SUPPORT."
 II. {¶ 11} In his first assignment of error, Charles contends that the trial court erred in granting Sundena permanent spousal support with no termination date. In name alone, this assignment of error seems to address the indefinite duration of the spousal support. However, Charles also appears to argue that the trial court erred by granting Sundenaany spousal support, regardless of the duration. Therefore, we will address both arguments under this assignment of error.
 A. The Award of Any Spousal Support to Sundena {¶ 12} It is well-settled that trial courts enjoy broad discretion in awarding spousal support. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67
(superseded by statute on other grounds). "A court's decision to award spousal support will not be reversed on appeal absent an abuse of discretion." Hirzel v. Ooten, Meigs App. Nos. 06CA10, 07CA13,2008-Ohio-7006, at ¶ 42, quoting White v. White, Gallia App. No. 03CA11,2003-Ohio-6316, at ¶ 21, citing Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 24. However, the relevant factors set forth in R.C. 3105.18(C)(1)(a)-(n) must guide the trial court's discretion. SeeCherry v. Cherry (1981), 66 Ohio St.2d 348, 355-56. This court must give deference to a trial court's decision regarding spousal support unless we find, after considering the *Page 5 
totality of the circumstances surrounding the award, that the trial court abused its discretion. Kunkle at 67; Holcomb, at 131;Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, syllabus. An abuse of discretion involves more than an error of judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore at 219. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135,137-138. An appellate court must be guided by the presumption that the findings of the trial court are correct because the trial court is in the best position to view the witnesses and weigh the credibility of the testimony. Id.
 {¶ 13} R.C. 3105.18(C)(1)(a)-(n) provides, "In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage; *Page 6 
(h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 14} "When making an award, the trial court must consider all of the factors under R.C. 3105.18(C), and must not base its determination upon any one of the factors taken in isolation." Brown v. Brown, Pike App. No. 02CA689, 2003-Ohio-304, at ¶ 10, citing Kaechele v. Kaechele (1988),35 Ohio St.3d 93, paragraph one of the syllabus. "[S]ome of the factors enumerated * * * are more pertinent than others in the process of reaching an equitable property division, while some are more relevant in ascertaining the need for and amount of sustenance alimony."Kaechele at 96.
 {¶ 15} Here, the trial court expressly discussed the following factors under R.C. 3105.18(C)(1): (a) and (b) that Charles had worked throughout the marriage while Sundena was, at the time, receiving unemployment benefits; (c) Sundena's *Page 7 
medical conditions, her medical expenses, and her lack of health insurance; (d) that Charles has a pension while Sundena has no savings or money for retirement; (e) that the marriage lasted for twenty-eight (28) years; (g) that Sundena had very little discretionary income or entertainment budget because her earnings went to necessities while Charles spent his earnings however he pleased; (i) the real estate, personal property, bank accounts, loans, and credit card debt of each party. Although the trial court did not expressly say so, it appears that R.C. 3105.18(C)(1) factors (f), (g), (j), (k), and (m) are not relevant to the present case. Neither party introduced evidence regarding the tax consequences of spousal support. "Where the parties do not produce evidence of tax consequences in the trial court, such consequences are merely speculative and need not be considered."Bolden v. Bolden, Geauga App. No. 2006-G-2736, 2007-Ohio-6249, at ¶ 30. See, also, Bauman v. Bauman, Erie App. No. E-01-025, 2002-Ohio-2172.
 {¶ 16} We cannot find an abuse of discretion in the decision to award spousal support to Sundena, especially considering the long duration of the marriage and the disparate financial positions of the Handschumakers. At the time of the divorce, Charles made approximately $30,000.00 a year. In contrast, Sundena received unemployment benefits and was set to lose her health insurance upon termination of the marriage. Without insurance, Sundena's prescriptions for diabetes, high blood pressure, and depression would cost her $437.57 a month. Moreover, in dividing the marital assets, the trial court ordered that Charles was the sole owner of the real estate in question, free and clear of *Page 8 
any interest of Sundena. Other than Charles's pension, there were no other significant assets from the marriage. Based on these facts, the trial court acted within its discretion by awarding spousal support to Sundena under R.C. 3105.18(C)(1).
 {¶ 17} Additionally, although it is not among the factors listed in R.C. 3105.18(C)(1), marital misconduct "may be a relevant factor in the court's determination" of spousal support. Zimmie v. Zimmie (1984),11 Ohio St.3d 94, 96. See, also, Kunkle at 69; Shreyer v. Shreyer, Fairfield App. No. 08CA17, 2008-Ohio-7013, at ¶ 22; R.C. 3105.18(C)(1)(n). Here, the trial court found that Charles engaged in significant misconduct. He was both mentally and physically abusive and drank consistently throughout the marriage. Finally, after Sundena left the family home to care for her cancer-stricken mother, Charles started entertaining a new girlfriend.
 {¶ 18} Accordingly, we find that the trial court did not abuse its discretion by awarding spousal support to Sundena.
 B. The Indefinite Duration of Spousal Support {¶ 19} We also cannot find an abuse of discretion in the decision to award spousal support to Sundena for an indefinite duration.
 {¶ 20} "Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time *Page 9 
and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities." Kunkle at paragraph one of the syllabus.
 {¶ 21} "[A] marriage of long duration `in and of itself would permit a trial court to award spousal support of indefinite duration without abusing its discretion or running afoul of the mandates of Kunkle.'"Vanke v. Vanke (1994), 93 Ohio App.3d 373, 377, quoting Corpac v.Corpac (Feb. 27, 1992), 10th Dist. No. 91AP-1036. "Generally, marriages lasting over 20 years have been found to be sufficient to justify spousal support of indefinite duration." Hiscox v. Hiscox, Columbiana App. No. 07CO7, 2008-Ohio-5209, at ¶ 47. See, also, Bowen v. Bowen
(1999), 132 Ohio App.3d 616, 627; Soley v. So/ey (1995),101 Ohio App.3d 540, 550; Vanke at 376-77; Taylor v. Taylor (Aug. 4, 1998), Scioto App. No. 97CA2537, unreported; Wolfe v. Wolfe (July 30, 1998), Scioto App. No. 97CA2526, unreported.
 {¶ 22} Here, the Handschumakers were married for twenty-eight (28) years. Because this was clearly a marriage of long duration, the trial court did not abuse its discretion by awarding Sundena spousal support for an indefinite duration.
 {¶ 23} Accordingly, we overrule Charles's first assignment of error.
 III. {¶ 24} In his second assignment of error, Charles contends that the trial court erred in calculating the amount of spousal support awarded to Sundena. Charles further contends that the award of spousal support is inequitable and *Page 10 
punitive in nature, particularly in regards to the termination events attached to the award.
 {¶ 25} "A trial court has broad discretion when determining an appropriate amount of spousal support." Yazdani-lsfehani v.Yazdani-lsfehani, Athens App. No. 08CA3, 2008-Ohio4662, at ¶ 7, citingBolinger v. Bolinger (1990), 49 Ohio St.3d 120, 122. Therefore, we also review the amount of spousal support awarded to a party under an abuse of discretion standard. Id.
 A. The Amount of Spousal Support Awarded to Sundena {¶ 26} Charles first contends that the trial court erred when it determined the amount of spousal support awarded to Sundena.
 {¶ 27} "The trial court must consider all the factors in R.C. 3105.18(C)(1)(a)-(n) to determine the amount of spousal support."Ervin v. Ervin, Scioto App. No. 02CA2850, 2003-Ohio-3517, at ¶ 16. Furthermore, "[t]he trial court must indicate the basis for its spousal support award in sufficient detail to enable us to determine that `the award is fair, equitable and in accordance with the law.'" Brown v.Brown, Pike App. No. 02CA689, 2003-Ohio-304, at ¶ 10, citingKaechele at paragraph two of the syllabus.
 {¶ 28} Here, there is insufficient detail for us to determine whether the amount of spousal support awarded to Sundena is indeed fair, equitable, and in accordance with the law. Based on the trial court's review of the factors in R.C. 3105.18(C)(1), we agree that some amount of spousal support is appropriate and reasonable. Nevertheless, the trial court did not adequately explain how it arrived at the figure of $700.00 a month. See, e.g., Lepowsky v. Lepowsky, *Page 11 
Columbiana App. No. 04CO42, 2006-Ohio-667, at ¶ 53 (finding that "some amount of spousal support is appropriate and reasonable, but the judgment entry contains no explanation of why $1,020.00 per month for eighty-two months is an appropriate and reasonable amount of spousal support in this case"); Cronin v. Cronin, Greene App. Nos. 02-CA-110, 03-CA-75, 2005-Ohio-301, at ¶ 37; (finding "no reasoning given as to how the court reached the amount of spousal support that it did. The trial court's judgment only gives its reasons justifying some award of spousal support[.]"). And similarly, we cannot discern from the record whether that figure is fair and in accordance with the law. See Breedlove v.Breedlove, Washington App. No. 08CA10, 2008-Ohio-4887, at ¶ 11.
 {¶ 29} In its findings of fact and conclusions of law, the trial court did not discuss the earnings of either party except to say that Sundena was receiving unemployment benefits. A review of the record shows that Charles claimed to earn $576.00[1] in gross weekly wages and $385.36 in net weekly wages. Sundena testified that, although she was unemployed at the time, she earned eight dollars ($8.00) an hour at her previous job. Before being laid off, Sundena claimed that she earned $310.00 in gross weekly wages and $264.77 in net weekly wages. When asked, Sundena agreed that she was suited for "minimum wage type job[s]" because she had few employment skills or abilities. However, Sundena also testified that she was looking for work and had no health restrictions that would limit her abilities in any particular job. *Page 12 
 {¶ 30} Except for medication costs, the trial court did not analyze each party's monthly expenses. The trial court did not discuss the housing costs, transportation costs, food costs, taxes, or utility bills of either party. In pre-trial affidavits, Charles and Sundena claimed to have weekly expenses of $434.81 and $456.65, respectively, but the trial court did not address the accuracy or credibility of these claims. And while Charles's adult son lives with him and shares in expenses, there is no discussion of how exactly those expenses are shared.
 {¶ 31} We have tried to understand how the trial court arrived at the figure of $700.00 per month with little success. Initially, we note that the spousal award represents over forty-two percent (42%) of Charles's net income. If we are to believe his pre-trial affidavit, Charles Handschumaker's expenses outweighed his net income by $49.45 a week even before the award of spousal support. By adding his spousal support obligations along with the fourteen-dollar ($14.00) per month statutory fee, Charles's weekly expenses would exceed his weekly net income by approximately $214.21. However, the trial court found that Charles shares in expenses with his adult son. For purposes of this discussion, we will assume that they each pay fifty-percent (50%) of the approximately $210.81 in weekly housing and grocery expenses listed in Charles's affidavit. Even under this scenario, spousal support would still cause Charles's weekly expenses to exceed his weekly net income by approximately $108.81. If there is a basis for an award of $700.00 per month, it is not evident from a review of Charles's income and expenses. *Page 13 
 {¶ 32} We cannot even attempt to analyze Sundena's income versus expenses in a similar manner because her income is simply unknown.
 {¶ 33} A trial court must consider all of a party's income, including the proceeds from unemployment insurance. R.C. 3105.18(C)(1)(a). See, generally, Flauto v. Flauto, Mahoning App. No. 02-CA-12, 2002-Ohio-6430, at ¶ 16 (including unemployment benefits as income when determining spousal support award). However, after a thorough review of the record, we cannot determine either the amount or the duration of Sundena's unemployment benefits. Moreover, we cannot determine whether the trial court based its award on the belief that Sundena will be earning no income, only unemployment benefits, or some other amount based on her earning ability. See, e.g., Weller v. Weller, Geauga App. Nos. 2001-G-2370, 2002-Ohio-7125, at ¶ 47(stating that a trial court may, in its discretion, impute income to parties for purposes of spousal support based on the party's earning ability); see, also, R.C. 3105.18(C)(1)(b). This makes it impossible to analyze how an award of $700.00 per month will contribute to her expenses.
 {¶ 34} Therefore, we find insufficient detail for us to determine whether $700.00 per month is indeed fair, equitable, and in accordance with the law.
 B. Charles's Pension {¶ 35} Charles also contends that the award of permanent support is punitive for the following reason. The support award does not terminate upon his retirement. And because the trial court divided Charles's pension as a marital asset, he will be forced to pay spousal support out of one half of his pension *Page 14 
should he retire. Charles calls this result grossly inequitable. We cannot say whether or not this result is grossly inequitable because, as we have discussed, the trial court did not indicate the basis of its support award with sufficient detail.
 {¶ 36} Initially, we note that a party may be required to pay spousal support out of income derived from pension benefits, even if those pension benefits have already been divided as marital property. SeeLindsay v. Curtis (1996), 115 Ohio App.3d 742, 746; Kelhoffer v.Kelhoffer (Nov. 26, 2001), Butler App. No. CA2001-02-031, unreported;Frederick v. Frederick (Mar. 31, 2000), Portage App. No. 98-P-0071, unreported; Briskey v. Briskey (July 23, 1998), Cuyahoga App. No. 73368, unreported. However, because of the division, the trial court had to consider Charles's pension benefits as income for both Charles and Sundena when the trial court determined the amount of spousal support. R.C. 3105.18(C)(1)(a). See, also, Keeton v. Keeton, Clark App. No. 06-CA-013, 2006-Ohio-6828, at ¶ 15; Hutchins v. Hutchins (Sept. 18, 2000), Preble App. No. CA99-11-021, unreported; Briskey. After a thorough review of the record, we cannot determine the amount of Charles's pension benefits, the amount each party will receive after the division, or when the benefits will vest. This contributes to our belief that there is insufficient detail for us to determine whether the award is fair, equitable, and in accordance with the law. Therefore, we find that the trial court abused its discretion when it failed to indicate the basis of its spousal award.
 {¶ 37} Accordingly, we sustain Charles's second assignment of error. We reverse this portion of the trial court's judgment and remand this matter so that *Page 15 
the trial court can indicate the basis of its spousal support award in sufficient detail to enable appellate review.
 IV. {¶ 38} In conclusion, we affirm the judgment of the trial court regarding the decision to award spousal support to Sundena for an indefinite duration.
However, we reverse the part of the judgment regarding the amount of the award because the trial court did not indicate the basis for the award in sufficient detail. We remand this cause to the trial court for further proceedings consistent with this opinion.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND CAUSE REMANDED. *Page 16 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART AND CAUSE REMANDED to the trial court for further proceedings consistent with this opinion, and Appellant and Appellee equally pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and McFarland, J.: Concur in Judgment and Opinion.
[1] Charles testified that he earned about $580.00 per week in gross wages. *Page 1